UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **TODD EMERSON BAKER,** | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 14-1456 (CRC) |
| | ) | |
| **UNITED STATES PAROLE** | ) | |
| **COMMISSION, et al.,** | ) | |
| | ) | |
| Respondents. | ) | |

**MEMORANDUM OPINION**

Todd Emerson Baker has been granted parole no less than six times on a single 1997 sentence in the Superior Court of the District of Columbia.  Each time, he violated a parole condition and was sent back to jail.  Due to this back and forth, calculating how much time remains on Baker's sentence is no small task.  In this petition for a writ of habeas corpus, Baker primarily contends that federal authorities have miscalculated the remaining time, resulting in his continued incarceration beyond the expiration of his sentence.  The Government counters that it has calculated Baker's sentence in accordance with all applicable laws and regulations.  Upon review of the parties' submissions, the Court finds that the Government has accurately calculated Baker's sentence and will therefore deny the petition.

**I.     Background**

Be forewarned: following the history of Baker's revolving-door relationship with the D.C. jail requires a measure of patience.

    A.     The Original Sentence, Probation, and Parole

Baker pled guilty in District of Columbia Superior Court to destruction of property, attempted unauthorized use of a vehicle (a misdemeanor), and unauthorized use of a vehicle.

1

See Fed. Resp'ts' Opp'n to Pet'r's Pet. for a Writ of Habeas Corpus ("Fed. Opp'n"), Ex. 41 ("Erickson Decl.") ¶ 5.  On January 24, 1997, the court initially suspended Baker's aggregate sentence of 14 years and 90 days and imposed a three-year term of probation instead.  Id.  Six months later, however, Baker's probation was revoked and the District of Columbia Department of Corrections ("DOC") "established a Full Term expiration of sentence date of September 8, 2011."  Id. ¶¶ 6–7.  Baker was transferred to federal custody in November 1999 pursuant to the National Capital Revitalization and Self-Government Improvement Act of 1997, at which point the Federal Bureau of Prisons ("BOP") adopted DOC's sentence computation in all respects except for adding four days of prior custody credit not already credited by DOC.  Id. ¶¶ 8–9; see id. Ex. 7 at 3.  He was first paroled on May 15, 2002 and was to remain under parole supervision through September 4, 2011, his Full Term Expiration date.  See Fed. Opp'n, Ex. 4 at 1.  As of May 15, 2002, 3,399 days remained on his sentence.  Erickson Decl. ¶ 10; see id. Ex. 7 at 3.

      B.      The First Parole Violation

On May 14, 2003, the Commission issued a warrant charging Baker with four violations of the conditions of his release: use of dangerous and habit-forming drugs, failure to maintain regular employment, failure to report a change in residence, and failure to submit supervision reports.  Fed. Opp'n, Ex. 5 at 1–2.  Baker was returned to BOP custody on June 20, 2003.  Id. Ex. 6 at 1; Erickson Decl. ¶ 11.  By the time of his revocation hearing on August 14, 2003, Baker had been charged with a fifth violation arising from his June 2003 arrest in Prince George's County, Maryland on three counts of theft of property valued at less than $500.  Id. Ex. 7 at 1–3.  Although Baker was found not guilty of these charges, the hearing examiner relied on Baker's admission to having entered a nolo contendere plea on one of the three theft counts to conclude that he had violated the conditions of release.  Id. Ex. 7 at 3.  On this basis and Baker's

admissions to the remaining four charges in the parole violation warrant, the hearing examiner recommended revocation of parole.  See id., Ex. 7 at 2–3.  The Commission agreed and ordered that Baker serve another 10 months in custody.  See generally id., Ex. 8–9.  None of the time spent on parole, popularly known as "street time," was credited against Baker's outstanding sentence at the time he was released on parole.  Id., Ex. 8 at 1.  "The [Commission] instructed the BOP to compute a sentence of 3,399 days . . . for the remaining time left on [Baker's] sentence at the time of his parole, to begin the sentence on the date of [his] arrest."  Baker's new full term expiration date was October 8, 2012.  Erickson Decl. ¶ 11.  Baker was re-paroled on April 2, 2004, leaving 3,111 days on his sentence.  Id. ¶ 12.  He was ordered to remain under parole supervision through October 8, 2012.  Fed. Opp'n, Ex. 9 at 1.

    C.    The Second Parole Violation

The Commission issued a second warrant two and a half months after Baker left custody.  See id., Ex. 10 at 1.  Baker was charged with failing to report a change of address, failing to report a change in employment, failing to report to his supervision officer as directed, and failing to submit supervision reports.  Id., Ex. 10 at 1–2.  He was arrested on September 7, 2004 and taken into custody on the warrant.  See id., Ex. 11 at 1.  Baker took responsibility for each violation charged, waived his right to a parole revocation hearing, forfeited street time, and agreed to substance abuse treatment and his return to custody for eight to 12 months.  See id., Ex. 11 at 1–2.  The Commission ordered that Baker serve eight additional months in custody.  See id., Ex. 12 at 1.  "The [Commission] instructed the BOP to compute a sentence of 3,111 days which accounted for the remaining time left on [Baker's] sentence at the time of his parole, and to begin the sentence on the date of [his] arrest" on September 7, 2004.  Erickson Decl. ¶ 13.  He received no credit for street time from April 3, 2004 through September 6, 2004 and his new full

term expiration date was determined to be March 14, 2013.  Id.; see id., Ex. 12 at 2.

Accordingly, when Baker was paroled on May 6, 2005, he was to remain under parole

supervision until March 14, 2013.  Fed. Opp'n, Ex. 13 at 1.  The seven months in prison took

Baker's remaining sentence down to 2,869 days.  Erickson Decl. ¶ 14; see id., Ex. 12 at 2.

### D.    The Third Parole Violation

On January 13, 2006, the Commission issued another warrant, this one charging Baker

with failure to submit to drug testing, use of dangerous and habit forming drugs, failure to report

to his supervision officer as directed, failure to report a change in residence, and a law violation

arising from his arrest in the District of Columbia on August 18, 2005 on a second degree

burglary charge.  Id., Ex. 14 at 1–2.  Baker was arrested almost ten months later and received a

probable cause hearing on November 7, 2006.  See generally id., Ex. 15, Ex. 16.  The

Commission revoked parole and ordered that Baker serve 18 more months in custody.  Id., Ex.

17 at 1.  He received six months of credit of toward the parole guidelines for time served before

the warrant was executed.  Id., Ex. 17 at 1.  The Commission instructed the BOP to compute

Baker's remaining sentence of 2,869 days "to begin . . . on the date of [Baker's] arrest" on

November 3, 2006 and to exclude street time, from May 7, 2005 through November 2, 2006.

Erickson Decl. ¶ 15; see id., Ex. 13 at 1.  His "new Full Term Expiration Date was September

10, 2014."  Id. ¶ 15.  Baker was re-paroled a year later, and was to remain under parole

supervision for seven more years.  Fed. Opp'n, Ex. 18 at 1.  As of November 2, 2007, 2,504 days

remained on his sentence.  Erickson Decl. ¶ 16; see id., Ex. 14 at 1.

### E.    The Fourth Parole Violation

Almost two and a half years passed with no further violations.  In April 2009, however,

Baker was charged with failure to maintain regular employment, failure to submit to drug testing,

4

failure to report to his supervision officer as directed, and a law violation arising from his arrest in Prince George's County, Maryland on charges of destruction of property and burglary. Fed. Opp'n, Ex. 21 at 1–2. Baker was convicted of second degree burglary and was in custody in Maryland from February 19, 2009 until his transfer to District of Columbia custody on January 28, 2010. See id., Ex. 22 at 2. The Commission revoked parole and ordered that Baker serve another 16 months of his sentence in custody, beginning on the date of his return from Prince George's County. See id., Ex. 23 at 1. Baker received no credit for street time, and thus 2,504 days remained on his term. Id.; Erickson Decl. ¶ 17. His "new Full Term Expiration date was December 5, 2016." Id. Baker was re-paroled after four and a half months in D.C. jail. As of June 18, 2010, over six years—2,362 days—remained until full satisfaction of his sentence. Erickson Decl. ¶ 18; Fed. Opp'n, Ex. 24 at 1.

    F.    The Fifth Parole Violation

Baker's continued drug use, see Fed. Opp'n, Ex. 25, among other violations, prompted the Commission to issue another warrant on September 9, 2011, id., Ex. 26 at 1–2. He was arrested a month later and at his probable cause hearing requested placement in a residential drug treatment program. See id. Ex. 28. The Commission held its proceedings in abeyance pending Baker's placement in and completion of a treatment program. Id., Ex. 29–30. He did not complete the program, however, and the Commission issued a warrant in August 2012 charging Baker with continued use of dangerous and habit forming drugs, failure to submit to drug testing, failure to report to his supervision officer as directed, failure to comply with a graduated sanction (GPS monitoring), failure to report a change in residence, and violation of a special drug

aftercare condition.[1]  Id., Ex. 31 at 1–2.  Baker was arrested on September 5, 2012.  Id., Ex. 32 at 1.  The Commission revoked parole and ordered that Baker serve another 12 months in custody.  Id., Ex. 34 at 1.  The Commission "gave [Baker] partial credit for the time he spent on parole from June 19, 2010, until July 15, 2012, thus reducing the number of days remaining from 2,362 to 1,604."  Erickson Decl. ¶ 19; Fed. Opp'n, Ex. 34 at 1.  His new Full Term Expiration Date was January 25, 2017.  Erickson Decl. ¶ 19.  Thus, when Baker "was released [on parole] for the sixth time on September 4, 2013," id., he had almost three and a half years of parole supervision ahead of him, Fed. Opp'n, Ex. 35.

### G. The Sixth and Most Recent Parole Violation

The Commission issued its most recent parole violation warrant on February 21, 2014, id., Ex. 36 at 2, and Baker was arrested on July 29, 2014, id., Ex. 37.  Baker's probable cause hearing was continued twice at Baker's request.  Id., Exs. 38–39.  The Commission thereafter revoked parole, forfeited time spent on parole from January 21, 2014 through July 29, 2014, placed Baker in the Short-Term Intervention for Success program, and, after he served six months in custody, directed his re-parole.  Pet'r's Resp. to Fed.'s Opp'n, ECF No. 15 ("Pet'r's Opp'n"), Ex. 5 at 1.  Baker was released from custody on January 28, 2015.

## II.  Analysis

A District of Columbia prisoner is entitled to habeas relief if he establishes that his "custody is in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  In contending his detention violated the laws of the United States and the

---

[1]  Baker allegedly left his last known residence on July 17, 2012, one day before he was to report to the Re-Entry and Sanction Center for substance abuse treatment, and one day after he failed to report for installation of a GPS device.  See Fed. Opp'n, Ex. 31 at 2.

Constitution, Baker disputes practically every action by every respondent as it relates to the computation of his sentence. See generally Pet'r's Opp'n.

First, Baker faults the Government for aggregating his misdemeanor sentence with his felony sentences. See, e.g., Pet. at 2; Pet'r's Opp'n at 2–3. According to Baker, the BOP cannot take individuals who commit misdemeanors into custody. See Pet'r's Opp'n at 5–6, 12–14. But as was the case even before the Revitalization Act, offenders under District of Columbia law are committed to the custody of the Attorney General of the United States or her designee, and she "shall designate the places of confinements where the sentences of all such persons shall be served." D.C. Code § 24-201.26. The law changed in August 2000—when it limited BOP to taking felons into custody—but under the law in effect in 1999, the District of Columbia Code permitted BOP to take Baker into custody for a misdemeanor. See Erickson Decl. ¶ 22 (explaining that because "the Sentencing Reform Amendment Act did not become effective until August 2000 and [Baker's] misdemeanor sentence was imposed prior to August 2000," Baker's sentences were "governed by the Omnibus Criminal Justice Reform Amendment Act, which allowed for misdemeanors to be combined with other misdemeanor[] and felony sentences").

Second, Baker claims that he has not received credit for the time he was in custody in Prince George's County, Maryland. See Pet. at 3; Pet'r's Opp'n at 8–9, 14–15. But he is not entitled to such credit. Under District of Columbia law, a prisoner is given credit for time spent in custody "as a result of the offense *for which the sentence is imposed*." D.C. Code § 24-221.03 (previous codified at D.C. Code § 24-431) (emphasis added). The time he spent in the custody of Prince George's County is attributable to his theft and burglary in that jurisdiction, not the offenses for which sentences were imposed by the District of Columbia Superior Court.

Third, Baker argues that federal authorities erred by failing to credit street time. See Pet. at 8; Pet'r's Opp'n at 10–11, 21. Yet under District of Columbia law in effect at the time, Baker was not entitled to credit for street time because his parole had been revoked. D.C. Code § 24-406(a); see also U.S. Parole Comm'n v. Noble, 693 A.2d 1084, 1085 (D.C. 1997), op. adopted, 711 A.2d 85 (D.C. 1998) (en banc); see also Jones v. Bureau of Prisons, No. 02-5054, 2002 WL 31189792, at *1 (D.C. Cir. Oct. 2, 2002) ("Under District of Columbia law, appellant cannot receive credit for time on parole, commonly known as 'street time,' after his parole has been revoked."). Although District of Columbia law has since changed—such that a prisoner may get credit for street time after his parole has been revoked under certain circumstances—the Commission may still order that a parolee not receive credit for the period of time that "a parolee intentionally refuses or fails to respond to any reasonable request, order, summons, or warrant of the Commission or any member or agent of the Commission[.]" D.C. Code § 24-406(c). These provisions took effect on May 20, 2009 and do not apply retroactively. Id. § 24-406(d) (limiting application "only to any period of parole that is being served on or after May 20, 2009"); see Ferguson v. Wainwright, 849 F. Supp. 2d 1, 5 (D.D.C. 2012). Thus, Baker's sentence has not been increased due to the Government failing to credit his street time, "but rather, the Commission rescinded credit towards completion of that sentence for time spent on parole, as required by D.C. law." Campbell v. U.S. Parole Comm'n, 563 F. Supp. 2d 23, 25 (D.D.C. 2008). Accordingly, Baker has not been improperly denied street time as he alleges, and the forfeiture of his street time does not violate the Constitution. See Brown v. U.S. Parole Comm'n, 713 F. Supp. 2d 11, 14 (D.D.C. 2010) (citing Davis v. Moore, 772 A.2d 204, 209 (D.C. 2001) (en banc)) ("Forfeiture of street time violates neither the Double Jeopardy Clause nor the Ex Post Facto Clause of the United States Constitution.").

Fourth, Baker contends that he has been denied other credit towards completion of his sentence.  See Pet. at 3.  For example, he claims to have earned educational good time credit "by completing various education and drug treatment programs."  Pet'r's Opp'n at 7–8.  The Government demonstrates that Baker did in fact receive credit for superior program achievement.  The Government also shows that "[Baker] was awarded 108 days of extra good time credit for educational programming from the time period of his sentence computation began on June 30, 1997, until his first release via parole on May 15, 2002."  Erickson Decl. ¶ 21; see id., Ex. 17 (Sentencing Monitoring Good Time Data as of 05-15-2002).  But because the statute authorizing institutional good time credit for District of Columbia Code offenders was repealed prior to Baker's convictions, see Glascoe v. United States, 358 F.3d 967, 969 (D.C. Cir. 2004) (noting repeal of Good Time Credit Act in 1994), he is not entitled to institutional good time credit, see Erickson Decl. ¶ 20, and he offers no support for his contention that he has earned additional credit towards service of his sentence.  Furthermore, any credit Baker has earned only affects the computation of his parole eligibility date and mandatory parole release date; it would not advance the full term expiration date of his sentence.  See D.C. Code §§ 24-201.29, 24-221.01; see also Ramsey v. Faust, 943 F. Supp. 2d 77, 82 (D.D.C. 2013).

Fifth, Baker suggests that federal authorities "violated the Ex Post Facto Clause" by failing to apply "regulations in effect at the time [he] was convicted," and thereby "increased [his] sentence in various ways."  Pet. at 3.  In addition, he claims that the Government violated his rights to due process and equal protection because they selected a "randomly chosen regime that increases [his] sentence" rather than "the 1987 regime."  Id. at 4.  The Court presumes that Baker's references to regulations in effect at the time he was convicted and to the "1987 regime" are to regulations developed and published by the former District of Columbia Board of Parole.

9

See D.C. Mun. Regs. tit. 28, § 100 et seq. (1987) (repealed Aug. 5, 2000). The United States Constitution prohibits any State from passing an "ex post facto Law." U.S. Const. art. 1, § 9, cl.3. The clause "is aimed at laws that 'retroactively alter the definition of crimes or increase the punishment for criminal acts.'" Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 504 (1995) (quoting Collins v. Youngblood, 497 U.S. 31, 43 (1990)). "Retroactive changes in laws governing parole of prisoners, in some instances, may be violative of this precept," if, for example, the law as applied to a particular prisoner's sentence "created a significant risk of increasing . . . punishment." Garner v. Jones, 529 U.S. 244, 250, 255 (2000). A successful Ex Post Facto claim requires that a petitioner show that he has faced a substantial risk of increased punishment by application of the Commission's regulations. See Richardson v. Pennsylvania Bd. of Prob. & Parole, 423 F.3d 282, 291-94 (3d Cir. 2005). Baker makes no such showing; he merely speculates as to the adverse impact of the Commission's regulations. Moreover, controlling precedent forecloses Baker's argument that revocation of street time can violate the Ex Post Facto clause, as revoking street time does not constitute increasing a sentence. See Campbell, 563 F. Supp. 2d at 26 (rejecting argument that revocation of street time violates the Ex Post Facto and Due Process Clauses of the United States Constitution).

### III.     Conclusion

Because Baker does not provide facts to establish that his custody is unlawful, the Court will deny the habeas petition and dismiss this action.[2]  An Order accompanies this Memorandum Opinion.

 

 

_____
CHRISTOPHER R. COOPER
United States District Judge

DATE:  June 2, 2015

---

[2] Baker's "Motion to Include Argument in Mooted Complaint," ECF No. 11, will also be denied. The Court assumes that Baker is referring to a prior habeas action brought in the United States District Court for the Eastern District of North Carolina, which was dismissed as moot upon his release from federal custody.  See Baker v. Tripp, No. 5:13-hc-02030 (E.D.N.C. Nov. 21, 2013). Baker may not litigate issues already resolved in prior cases.